MURRAY, Administrator, Respondent, vs. NORWOOD and another, Appellants.

*September 6 — September 23, 1890.*

*(1) Foreign administrators: Filing appointment in this state. (2) Expert testimony: Value of municipal bonds. (3–6) Replevin: Identification of property: Evidence: Presumptions as to ownership and possession: Instructions to jury.*

1. Under sec. 3267, R. S., a foreign administrator may have the same rights and remedies as one appointed in this state, upon filing his appointment or a duly authenticated copy thereof in *any* county court in this state — not necessarily in a county in which the decedent had property or in which suit is to be brought.

2. A witness who had been in the banking business for twenty-two years, engaged in buying and selling municipal bonds, and who had a general knowledge of the value of such securities, was competent to give an opinion as to the value of Atlanta city bonds, although he had never dealt in them and had no special knowledge as to their market value.

3. In replevin by an administrator for a certain sum of money and certain municipal bonds claimed to have been sent by the decedent in a box by express to one of the defendants, evidence showing the denomination of the bank bills sent and the numbers and amounts of the bonds, is *held* sufficiently to identify and describe the property.

4. A witness for the plaintiff having testified that a certain amount of money was put into the box and sent to one of the defendants, and the defendants having testified that they did not receive any money in the box, it was not error to charge the jury that the amount of money which was deposited in the box and sent should be determined from the testimony of the plaintiff's witness alone.

5. It was not error to charge that if the decedent, shortly before his death, or at the time it was claimed the box was sent, had the money and bonds in his possession, then the presumption was that he was the owner of the same at the time of his death, and that the plaintiff was entitled to the possession thereof.

6. Nor was it error to charge that if the defendants were in possession of the property at the time the box was received, the presumption was, unless the property was wrongfully disposed of, it was in their possession at the commencement of the action; and if they were in

possession of the property at the time the box was received, but had wrongfully placed it in the possession of some one else, to conceal it or to prevent the plaintiff from recovering it, then they were liable the same as if they were in the actual possession of the property

APPEAL from the Circuit Court for *Sheboygan* County.

Action of replevin to recover possession of "$200 in bank bills and silver" and certain municipal bonds of the city of Atlanta, Georgia, described as Nos. 11, 60, 61, 64, 65, and 83, for $1,000 each, and Nos. 446, 447, 448, and 657, for $500 each. The bonds are alleged to be of the value of $10,000, and, together with the $200, to have been the property of John H. Norwood, deceased, at the time of his death. The plaintiff claims as administrator of the estate of said John H. Norwood.

The defendants answered separately, each denying "generally and specifically each and every allegation contained in the complaint."

On the trial, John B. Le Saulnier, a witness for the plaintiff, testified, under objection, that bonds of the city of Atlanta, such as those in suit, would be worth in the market a premium above their par value, varying in amount according to the rate of interest which they bore and the date of their maturity. A further reference to this testimony will be found in the opinion, in which also the other evidence and the instructions to the jury are sufficiently stated.

The verdict was as follows: "We, the jury in the above-entitled action, find for the plaintiff in said action, that he is entitled to the possession of the property described in the complaint, and assess the value thereof at the sum of $9,370, and find that the same is unlawfully detained by the defendants." From the judgment entered upon such verdict in favor of the plaintiff the defendants appeal.

*Edw. S. Bragg*, for the appellants.

For the respondent there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas,* and oral argument by *J. G. Flanders* and *W. K. Gibson.*

COLE, C. J.   This is an action of replevin brought by a foreign administrator to recover property belonging to the estate of the testator.   It is objected that it did not appear that the plaintiff had legal capacity to bring the suit in this state.   This objection is naturally the one first to be considered.   The complaint alleges that in September, 1886, John H. Norwood, who was then a resident of the city of Washington, in the District of Columbia, died in said city of Washington, and that on or about the 2d day of February, 1887, the above plaintiff was duly appointed the administrator of the estate of John H. Norwood, deceased, before the supreme court of the District of Columbia, holding a special term for orphans' court business, and that thereafter, on the same day, said plaintiff duly qualified as such administrator, and as such is entitled to the possession of all the personal property belonging to the estate of John H. Norwood, deceased; that before the commencement of the above-entitled action a copy of the original appointment of such plaintiff as such administrator, duly authenticated as required to make the same receivable in evidence, had been filed in the county court of Milwaukee county, and is now on file therein, etc.   The answers denied generally and specifically each and every allegation of the complaint.

Now, sec. 3267, R. S., provides, in effect, when an executor or administrator shall have been duly appointed in any other state, territory, or country, on the estate of any person not a resident of this state at the time of his death, and no executor or administrator shall have been appointed in this state, such foreign executor or administrator, upon filing his original appointment, or a copy thereof duly authenticated as required to make the same receivable in

evidence, in any county court in this state, may thereafter exercise any power over such estate, . . . prosecute and defend any action relating thereto, and have all the rights and remedies which an executor or administrator appointed in this state can have or exercise. This provision, which seems to have been fully complied with, removed all disability of the plaintiff to sue in the courts of this state. A copy of his original appointment as administrator, duly authenticated so as to make the same receivable in evidence, was duly filed in the county court of Milwaukee county; but the learned counsel for the defendants insists that this was not a sufficient compliance with the statute, because he says such filing should have been in the county court of Sheboygan county, where the property was at the time, and where the action was afterwards brought. We cannot concur in this construction of the statute. The manifest intent of the provision seems to be to give the filing of a duly authenticated copy in the county court the same legal effect which would be given to the record of an original appointment made by a court of this state; for the language is that the copy is to be filed in any county court in the state. It does not say in the county court of a county where there are assets, or where the suit is to be brought. When the proper copy of the original appointment is duly filed in any county court, the foreign administrator or executor is placed upon the same footing as a domestic administrator or executor, so far as capacity to sue in our courts. is concerned. He need not take out any new letters of administration, nor obtain any further appointment from the courts of this state, because his authority or title derived from the foreign court is all-sufficient. The statute gives him the right to prosecute and defend all actions relating to his estate, and he can exercise over such estate any power which a domestic administrator or executor would have or could exercise. But before the record is made by

the filing of the properly authenticated copy, or by the filing of the original appointment, the disability of the foreign administrator to sue here continues; but with the record made the disability ceases under the statute. *Smith v. Peckham*, 39 Wis. 414.

We may likewise add here that sec. 4200, R. S., provides, " whenever a plaintiff shall sue as an executor, administrator, guardian, or trustee, and shall allege in his complaint his due appointment as such, and, if appointed in another state or foreign country, the filing or recording of the authenticated copy of his appointment as required by the laws of this state, such allegations shall be taken as true, unless specifically denied by the defendant by his answer, duly verified." There was no denial under oath in the answers of any fact or matter stated in the complaint, and therefore the allegations in regard to the appointment and the filing of the authenticated copy of the same were properly taken as true without proof.

It is further said there is no averment in the complaint that the deceased had any goods or chattels in Milwaukee county, where the duly authenticated copy was filed; but, from the views which we have expressed as to the meaning of the statute, it is clear that no such averment was necessary, nor was it essential to allege that John H. Norwood was not a resident of Wisconsin when he died. It is, however, distinctly alleged that he was a resident of the city of Washington when he died; and there is abundant evidence to prove that allegation. We do not cite the testimony which establishes the fact, because it is unnecessary. It will be found in the bill of exceptions, and clearly and conclusively proves the allegation as to residence. Whether sec. 4200, R. S., did not dispense with this proof, in view of the answer, is a question we need not decide. It is sufficient to say that the proof was most satisfactory that

John H. Norwood did not reside in this state at the time of his death.

It is further insisted that the court below erred in receiving the testimony of the witness Le Saulnier, and permitting it to go to the jury to establish the value of the bonds. The property which the plaintiff seeks to recover the possession of is described in the complaint as $200 in bank-bills and silver, and certain municipal bonds of the city of Atlanta, Georgia, giving the numbers and amounts thereof. The witness testified that he had been engaged in the banking business in Milwaukee for twenty-two years, and had bought and sold municipal bonds, but had never dealt in Atlanta bonds, and had no special knowledge as to their market value; but he was permitted to give an opinion, under objection, as to the market value of Atlanta city bonds maturing in 1902, running at eight per cent. interest. We think the testimony of the witness was competent. It comes within the principle of numerous adjudications which admit the opinions of witnesses as to value. The witness was a banker, engaged in buying and selling municipal bonds. He had a general knowledge of the value of such securities from having dealt in them. True, he had not bought and sold Atlanta bonds, nor was it necessary he should in order to qualify him to give an opinion as to their value. His experience and information acquired in the business of banking would enable him to testify as to the value of such bonds, though he had not dealt in them. "It is not necessary, in order to qualify one to give an opinion as to values, that his information should be of such a direct character as would make it competent of itself as primary evidence. It is the experience which he acquires in the ordinary conduct of affairs, and from means of information such as are usually relied on by men engaged in business for the conduct of that business, that qualifies him to testify." *Whitney v.*

*Thacher*, 117 Mass. 523.   Mr. Wharton lays down the same rule, and cites many decisions in his notes to sustain the text.   1 Whart. Ev. § 446.   He says, on questions of valuation of property it is impracticable to lay down any precise line of demarkation between the expert and non-expert. The safest course is to permit the examination of all having experience in or acquaintance with the thing to be valued, leaving their authority to be tested on their cross-examination.   We therefore think there was no error in the admission of the evidence, nor in the instruction of the court upon that point.   We will furthermore add that the testimony of this witness as to the value of the bonds was really unimportant, as a computation will show that the full amount of the face of the bonds, with interest thereon, was not recovered in the action.   So the testimony could not have done the defendants any harm, even if improperly admitted.

It is further objected that the money and bonds were not sufficiently identified or described so that they could be distinguished from other property of that kind.   It was claimed on the part of the plaintiff that the money and bonds in question were put into a tin box at Washington; that the box was locked, and sent by express to the defendant *Josephine Norwood* at Sheboygan Falls.   There was evidence tending to prove the numbers and amounts of the bonds, and the denomination of the bank-bills which were placed in the box, and this evidence sufficiently identified and described the property, especially in view of the fact that the defendants presumably had the property in their possession or under their control, and could have corrected any mistakes made by the plaintiff's witnesses in the description of it.   The witness Gary testified that he helped John H. Norwood to put the bonds and bank-bills of certain denomination in the tin box with other papers, and that the box was then locked, and he himself left it at the ex-

press office, directed to the defendant *Josephine Norwood*, Sheboygan Falls. This showed that this money and these bonds were so placed by the deceased in a box that they could be distinguished from other money and other bonds; and, under the circumstances, the presumption is that the description of the property by the plaintiff's witnesses was correct, for if it had not been the defendants would have furnished the correct description, as the property was presumably in their possession.

And here we will notice an exception which was taken to that portion of the charge in which the court told the jury that, if they found that the plaintiff was entitled to recover, then the only testimony in regard to the amount of money which was placed in this box was given by the witness Gary, and that the jury should ascertain and determine from his testimony, and his testimony alone, the amount of money which was deposited in the box and sent, as claimed, to the defendant *Josephine Norwood* at Sheboygan Falls. This direction of the court was correct, for the record does not contain any testimony except that of Gary as to the amount of bills or money which was deposited in the box. True, the defendants both testified that they did not receive in the box $200 in currency, nor any other amount of money, but from the nature of the case they could not and did not contradict Gary as to the money which was put in the box at Washington. But under the charge of the court the jury must have found that the bonds and money were received by the defendants at Sheboygan Falls, and that they were under the control of the defendants when the suit was commenced.

The will of John H. Norwood, purporting to have been probated by the orphans' court of the District of Columbia, was offered in evidence by the defendants, from which it appeared that Ralph W. Norwood was named as executor therein. Such being the case, it is said no letters of ad-

ministration could issue to the plaintiff; but Ralph W. Norwood testified that he renounced the trust, and did not qualify as executor, so letters of administration with the will annexed could properly issue to the plaintiff.

A number of exceptions were taken to the charge, some of which are covered by the observations which we have made on the case, and need not be further noticed. The charge is quite lengthy, and seems to have submitted all questions of fact under proper instructions to the jury. Among other things, the court told the jury that if John H. Norwood, shortly before his death, or at the time it is claimed the box was expressed to the defendant *Josephine Norwood*, had the bonds and money in question in his possession, then the presumption was that he was the owner of the same at the time of his death, and that the plaintiff was entitled to the possession of the property described. We see no error in this instruction. The possession of personal property is *prima facie* proof of ownership, and if the box with the bonds and money were deposited in the express office in the city of Washington, duly addressed to the defendant *Norwood* at Sheboygan Falls, it is *prima facie* or presumptive evidence that the property in it, or bonds and money, whatever they were, were in the box when it was received at Sheboygan Falls. That presumption will continue until it is shown by evidence that no bonds or money were in the box. This was the charge of the court, and the court added, if no bonds were received by the defendants with this box at Sheboygan Falls, then they were entitled to a verdict. But if the bonds and money in question were in the box at the time it was received at Sheboygan Falls, it would then be for the jury to determine whether or not the bonds and money were in the possession of the defendants or under their control at the time of the commencement of the action. If the defendants were in possession of the property described in

the complaint at the time the box was received, the presumption is, unless the property was wrongfully disposed of, it was in their possession at the time of the commencement of this action. If the defendants were in the possession of the property at the time the box was received, but had wrongfully placed the bonds or money in question in the possession of some one else, for the purpose of concealing the same or to prevent the plaintiff from recovering possession thereof, then the defendants were liable the same as if they were in the actual possession of the property.

There was a sufficient demand alleged and proven, if any demand were necessary where the agent refuses to restore the property which he has received for safe-keeping. The letters which were introduced in evidence showed that the tin box and contents were more than once demanded of the defendants and such demand refused. It is plain, if the plaintiff was entitled to recover, he should recover the market price of the bonds which the evidence showed had been received by the defendants. We see no objection to the amount of the recovery, nor to the sufficiency or form of the verdict. This disposes of all the material questions in the case.

*By the Court.*— The judgment of the circuit court is affirmed.