IN RE the RETURN OF PROPERTY IN STATE V. BENHOFF:

STATE of Wisconsin, Plaintiff-Respondent,

v.

Mark F. BENHOFF, Defendant-Appellant.†

Court of Appeals

*No. 93–0199. Submitted on briefs December 3, 1993.—Decided May 19, 1994.*

(Also reported in 518 N.W.2d 307.)

†Petition to review denied.

For the defendant-appellant the cause was submitted on the brief of *Charles Bennett Vetzner*, assistant state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *Dan Bradley Martin*, assistant district attorney.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

GARTZKE, P.J.   In 1990 Mark Benhoff was sentenced to thirty years imprisonment for attempted

first-degree murder and injury by conduct regardless of life, §§ 939.32, 940.01(1) and 940.23, STATS., 1985-86. He appeals from a circuit court order (a) denying his application for the return of photographs seized prior to his conviction pursuant to a search warrant, and (b) directing the photographs' destruction. He claims that under § 968.20, STATS., he is entitled to the photographs.

The seized photographs are of two women appearing individually. Without describing each photograph in detail, it is fair to say that some show only a face, some show naked breasts, some show gaping female genitals and others show a hand or underclothing covering female genitals. One shows fingers thrust into a vagina, and a few show a bottle inserted into a vagina. After his conviction, Benhoff applied to the circuit court for return of the photographs to him. The circuit court denied his application, and he appeals.

Section 968.20, STATS., provides in relevant part:

(1) Any person claiming the right to possession of property seized pursuant to a search warrant or seized without a search warrant may apply for its return to the circuit court for the county in which the property was seized or where the search warrant was returned. The court shall order such notice as it deems adequate to be given the district attorney and all persons who have or may have an interest in the property and shall hold a hearing to hear all claims to its true ownership. If the right to possession is proved to the court's satisfaction, it shall order the property, other than contraband or property covered under sub. (1m) or s. 951.165, returned if:

(a) The property is not needed as evidence or, if needed, satisfactory arrangements can be made for its return for subsequent use as evidence; or

(b) All proceedings in which it might be required have been completed.

Thus, the elements of the statute entitling a person to the return of seized property are (1) the person seeking return has a right to possession of the property, (2) the property is not contraband (or property covered under §§ 968.20(1m) or 951.165, STATS.[1]), and (3) the property is not needed as evidence (or, if needed, arrangements can be made for its return for subsequent use as evidence, or all proceedings in which it might be required have been completed). If the elements of the statute are met, the court "shall" order the return of the property. "Shall" is generally used in its mandatory sense, and that is how we read it here. *C.A.K. v. State*, 154 Wis. 2d 612, 621-22, 453 N.W.2d 897, 901 (1990).

It is undisputed that the photographs are not needed as evidence and that all proceedings in which the photographs might be required have been completed. Benhoff testified that he took all of the photographs with his own film, had them developed, and kept them in a locked filing cabinet in his mother's home. The State offered no evidence to the contrary. Section 968.20(1), STATS., therefore entitles him to the photographs, unless they are contraband.

[1] Neither § 968.20(1m), STATS., nor § 951.165, STATS., is relevant to our analysis.

Our supreme court has described the predecessor[2] of §§ 968.13(1) and 968.20, STATS., as the Wisconsin "contraband statute." *State v. Voshart*, 39 Wis. 2d 419, 429, 159 N.W.2d 1, 6 (1968). Section 968.13(1) provides in relevant part:

> A search warrant may authorize the seizure of [any of] the following:
>
> (a) Contraband, which includes without limitation because of enumeration lottery tickets, gambling machines or other gambling devices, *lewd, obscene or indecent* written matter, pictures, sound recordings or motion picture films, forged money or written instruments and the tools, dies, machines or materials for making them, and controlled substances, as defined in s. 161.01(4), and the implements for smoking or injecting them.

(Emphasis added.)

The *Voshart* court held that "[t]he words 'lewd, obscene or indecent' in the Wisconsin contraband statute must be interpreted in the constitutional sense, as including only printed or filmed materials that are not protected by the [F]irst [A]mendment to the United States Constitution as interpreted by the United States Supreme Court." *Voshart*, 39 Wis. 2d at 429, 159 N.W.2d at 6.

---

[2] The court described § 963.04(5), STATS., 1967-68, as the "contraband statute." At that time, a search warrant could authorize seizure of any lewd, obscene or indecent picture prohibited by statute. Section 963.02(3), STATS., 1967-68. Section 963.04(5) provided in relevant part that after seized contraband is no longer needed at trial, it "shall be destroyed. [Contraband] includes . . . lewd, obscene or indecent . . . pictures . . . ." Laws of 1969, ch. 255, §§ 55 and 63, repealed these sections and created §§ 968.13(1) and 968.20, STATS.

604

The *Voshart* court applied the tests for obscenity under the then pertinent United States Supreme Court decisions: *Mishkin v. State of New York*, 383 U.S. 502 (1966), *Memoirs v. Massachusetts*, 383 U.S. 413 (1966); and *Roth v. United States*, 354 U.S. 476 (1957). In 1973, the United States Supreme Court announced new guidelines to determine whether state statutes designed to regulate obscene materials are consistent with the First Amendment. *Miller v. California*, 413 U.S. 15 (1973).

> The basic guidelines for the trier of fact must be:
>
> (a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest;
>
> (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and
>
> (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. We do not adopt as a constitutional standard the "*utterly* without redeeming social value" test of *Memoirs v. Massachusetts*, 383 U.S. at 419 . . . .

*Miller*, 413 U.S. at 24 (citations omitted).[3]

The *Miller* court described a few plain examples of what a state statute could define as obscene under guideline (b), as follows:

---

[3] Under guideline (c), "[t]he proper inquiry is not whether an ordinary member of any given community would find serious literary, artistic, political or scientific value in allegedly obscene material, but whether a reasonable person would find such value in the material, taken as a whole." *Pope v. Illinois*, 481 U.S. 497, 500 (1987).

(a)  Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

(b)  Patently offensive representations or descriptions of masturbation, executory functions, and lewd exhibition of the genitals.

*Miller*, 413 U.S. at 25.

Because our high court held in *Voshart* that Wisconsin's contraband statute, now § 968.13(1)(a), STATS., must be construed in light of United States Supreme Court decisions pertaining to obscenity, the circuit court, as the factfinder, must apply the guidelines described in *Miller* to determine whether the photographs at issue are lewd, obscene or indecent.

During the hearing, the circuit court characterized the photographs as pornographic. At the conclusion of the testimony, the court said that Benhoff's only possible use of the photographs would be to display them in the prison system, and that would be degrading and odious "to the victims of the crimes" for which the defendant had been convicted. The court regarded two letters that Benhoff had written to one of the women in the photographs as threats to use the pictures. The court said that if the photographs were anybody's property, they belong to the subjects of the photographs. The court ordered the photographs destroyed upon exhaustion of Benhoff's appellate rights.

The circuit court's finding that display of the photographs would be degrading and odious to the "victims of the crimes" for which Benhoff has been convicted lacks a basis in the record. Benhoff identified the women whose photographs he took. Neither is the victim of the crimes for which Benhoff was convicted.

■

Except to characterize all of the photographs as "pornographic," the circuit court made no finding that any of the photographs is or is not contraband, within the *Miller* guidelines. That wholesale characterization is unacceptable. It is unreasonable, for example, to label as obscene a photograph showing only a woman's face. Since the circuit court made no findings of fact consistent with the *Miller* guidelines, we return this case to that court for further consideration.[4]

*By the Court.*—Order reversed and cause remanded for further proceedings consistent with this opinion.

SUNDBY, J. (*dissenting*). The majority correctly concludes that Benhoff has the right to return of the

---

[4] The point raised by the dissent, that nothing in the law makes unlawful the possession of obscene photographs in one's own home, is necessarily predicated on *Stanley v. Georgia*, 394 U.S. 557 (1969). The *Stanley* court held that the power of the states to regulate obscenity "simply does not extend to mere possession by the individual in the privacy of his own home." *Id.* at 568. Benhoff, however, does not contend that his possession of the photographs is constitutionally protected. Furthermore, as we noted, he had written letters to one of the women with threats to use the pictures. In one letter, Benhoff wrote that he had sent copies of the pictures to " 'Hustler' and 'Gent' [magazines] with a letter giving them permission to publish them—your signature in letter." The letter continues, "a friend of mine has two other sets and is going to post them in bars, grocery stores, and laundromats. . . . I may be able to stop them [sic] if I want to." Those are not the acts of a person who merely possesses photographs in the privacy of his own home, and possession of the pictures is not within the protection of the First Amendment if the pictures are obscene.

photographs, unless they are contraband. Because the photographs are not contraband, Benhoff has the right under § 968.20, STATS., to return of the photographs.

"Contraband" is defined as: "In general, any property which is unlawful to produce or possess." BLACK'S LAW DICTIONARY 322 (6th ed. 1990).

Benhoff possessed these photographs in a locked file cabinet in a mobile home he shared with his mother. He did not attempt to distribute them to others or to show them to prohibited persons; nor did he offer them for sale. There is nothing in the law which makes unlawful possession of lewd, obscene or indecent photographs in one's own home; it is the use which the owner makes of the photographs which determines whether they are contraband. If Benhoff attempts to display them in the Waupun Correctional Institution, that display will be subject to prison regulations. If he attempts to sell them or show them to prohibited persons, such as minors, the pictures may then be seized because Benhoff would be applying them to an unlawful use.

Because Benhoff has established a right to return of the photographs under § 968.20(1), STATS., I see no purpose in remanding this appeal to the trial court to determine which of the photographs are obscene. It is irrelevant whether the photographs are obscene. I therefore respectfully dissent.